```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
   ANTHONY WALKER,                                          :
                                      Petitioner,           :
                                                            :        14-CV-7458 (JPO)
               -v-                                          :
                                                            :        OPINION AND ORDER
   DANIEL F. MARTUSCELLO, JR.,                              :
                                      Respondent.           :
                                                            :
------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

*Pro se* Petitioner Anthony Walker has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking review of his jury conviction in New York State Supreme Court, Bronx County, on one count of burglary in the second degree. (Dkt. No. 1 ("Petition").) On February 26, 2015, the District Attorney filed an opposition to the Petition on behalf of Respondent. (Dkt. No. 13.) For the reasons that follow, the Petition is denied.

**I.    Background**

On October 12, 2007, Walker was indicted on charges, including burglary in the second degree, associated with the May 27, 2007 burglary of the home of Jinnette Diaz and Francisco Nuñez (the "Diaz burglary"). (Dkt No. 13-13 at 11:24-12:9; Dkt. No. 13 ¶ 6.) On January 31, 2008, Walker was indicted on additional charges associated with the May 30, 2007 burglary of the home of Maritza Bellamy (the "Bellamy burglary"). (Dkt. No. 13-13 at 5:20-6:18; Dkt. No. 13 ¶ 6.)

Following consolidation of the indictments, a trial commenced in February 2010. On March 12, 2010, after both sides had rested, defense counsel suddenly passed away and a mistrial was declared. (Dkt. No. 13 ¶ 7; Dkt. No. 13-11.)

1

On May 5, 2010, a second trial began.  At the outset, the prosecution moved to dismiss all counts related to the Bellamy Burglary because Bellamy "decided that she [would] follow[] her own instructions from a higher being and [would] not come to court to testify." (Dkt. No. 13-13 at 5:21-6:8.)  The court granted the motion to dismiss and a trial proceeded on the charges related to the Diaz burglary.

At trial, Jinnette Diaz testified that on May 27, 2007, she lived in an apartment at 1707 Boston Road in the Bronx with her stepfather Francisco Nuñez. (Dkt. No. 13-16 at 287-88.)  When she left her apartment unoccupied at about 2:30 p.m., "everything was in order." (*Id.* at 288-89.)  When she arrived back home at approximately midnight on the same day, the front door was unlocked and inside "everything was [in] disorder." (*Id.* at 290.)  Her laptop, radio, television, and clothes were missing, in addition to approximately two hundred dollars in cash. (*Id.* at 291-92.)  Social security cards, credit cards and a marriage certificate were also missing. (*Id.* at 293.)  In addition, a larger television had been moved from its ordinary place. (*Id.*)  Diaz also testified that she noticed that the "fire escape was damaged." (*Id.* at 294.)  The gate on the fire escape looked like someone had "pushed it [in] hard." (*Id.* at 296.)

Sergeant Denise Diaz (no relation), a court-declared expert in the collection of fingerprint evidence, testified that she arrived at Jinnette Diaz's residence at approximately 8:30 a.m. on the morning of May 28, 2016. (*Id.* at 324, 326.)  Observing that "someone must have entered through" the gate securing the fire escape, Sergeant Diaz "concentrated" on this area and was able to obtain certain fingerprint impressions from the metal frame and the bottom window. (*Id.* at 328-334.)  Other attempts to obtain prints from the rest of the apartment were unsuccessful. (*Id.* at 339-40.)  Sergeant Diaz also took "elimination prints" from Mr. Nuñez. (*Id.* at 341.)

Rosalyn Conway, a civilian employee of the New York City Police Department, testified that she worked in the "bureau of investigation" and in that capacity "compared, searched and

2

classified[,] and read fingerprint[s]" for almost three decades.  (Dkt. No. 13-17 at 375-76.)  In this role, there came a time when she received the fingerprint impressions obtained by Sergeant Diaz, including the elimination prints.  (*Id.* at 389.)  Although only one of the two fingerprint impressions taken from the Diaz apartment was clear enough to be useful in the investigation, Conway's analysis concluded that this impression matched Walker's fingerprint, which was on file with the police department.  (*Id.* at 395-402.)

Detective Sonny Sankhi testified that he was assigned to investigate the Diaz burglary.  (*Id.* at 408-09.)  As part of this investigation, he spoke with Jinnette Diaz, as well as other residents on the floor of her apartment building, "surveyed the building for any surveillance equipment," and determined that "at the time there was no video surveillance at the location."  (*Id.* at 409-10, 412-13.)  After obtaining the results from the investigation of the fingerprint recovered at the Diaz residence, Detective Sankhi arrested Walker.  (*Id.* at 411.)

On May 14, 2010, the jury convicted Walker of burglary in the second degree.  (Dkt. No. 13-17 at 498-99.)  At sentencing, the Honorable Robert Seewald, New York Supreme Court Justice, concluded that, by virtue of a prior 2003 conviction for burglary in the second degree that resulted in thirty months' incarceration, Walker would be sentenced for the instant offense as a second violent felony offender under New York law.  (Dkt. No. 13-12 at 5:13-6:10.)  In sentencing Walker to fourteen years' incarceration followed by post-release supervision, Justice Seewald explained the basis for the sentence as follows:

> "The Court takes it into account after careful consideration that defendant was convicted of [the Diaz] burglary.  Thankfully no one was injured . . . . No one was home, property was stolen.  The Court also is cognizant of the facts of the [Bellamy] burglary because that complaining witness and all the witnesses on the case had testified before me previously to the similar burglary where no one was home, but in that situation a knife was found in the [Bellamy] apartment and it was—the testimony showed that the defendant's DNA was on that knife.

> These are the most serious charges with the defendant having been convicted previously of a violent burglary. Accordingly, the defendant is sentenced as a second violent felony offender. Reflecting the seriousness of the case for which he was convicted, and granting that there were no injuries, not through any grace of the defendant, I do sentence the defendant to serve 14 years in state prison followed by five years post-release supervision."

(*Id.* at 6:11-7:4.)

Following sentencing, Walker filed a timely appeal to the Appellate Division of the New York Supreme Court, First Judicial Department, on two grounds: (1) that the verdict rendered by the jury was against the weight of the evidence and (2) that the fourteen-year sentence was excessive or, in the alternative, that the court improperly considered at sentencing a crime of which Walker was not convicted. (Dkt. No. 13-2.) In rejecting his appeal, the Appellate Division held that "the verdict was not against the weight of the evidence" and that "the sentence [was not] excessive" without specifically addressing Walker's alternative argument that Justice Seewald improperly considered the circumstances of the Bellamy burglary at sentencing. *People v. Walker*, 963 N.Y.S.2d 872 (N.Y. App. Div. 2013), *leave denied*, 17 N.E.3d 512 (N.Y. 2014).

On October 8, 2013, Walker filed a *pro se* motion to vacate his May 2010 conviction pursuant to New York Criminal Procedure Law § 440.10. (*See* Dkt. Nos. 13-5; 13-6; 13-7.) Walker raised a variety of grounds in his petition: (1) that he was denied his right, as enunciated in *People v. Antommarchi*, 604 N.E.2d 95, 97 (N.Y. 1992), to be present during the sidebar questioning of a potential juror concerning that juror's ability to objectively weigh the evidence; (2) that prospective jurors exhibited during *voir dire* "extenuating factors that may have impacted . . . their verdict of guilty"; (3) that the prosecution failed to prove his guilt beyond a reasonable doubt, in light of weakness in the prosecution's fingerprint evidence; (4) that the prosecution failed to make certain disclosures in violation of *Brady v. Maryland*, 373 U.S. 83 (1983); (5) that he was erroneously denied access to the portion of the transcript of his mistrial

that concerned the Bellamy burglary, thereby hindering preparation of his direct appeal; and (6) that his trial attorney provided constitutionally ineffective counsel. (Dkt. No. 13-5.) Walker also maintained that the ineffectiveness of his trial counsel could serve to excuse any procedural default stemming from his failure to object in a timely manner to these violations. (*Id.*)

The Supreme Court of the State of New York, County of Bronx, denied Walker's motion to vacate his sentence on several grounds. The court first determined that Walker's claims were "procedurally barred" as they were "record-based and should have been raised on [Walker's] direct appeal." (Dkt. No. 13-10 at 3.) Procedural hurdles aside, the court proceeded to review Walker's claims and rejected each on its merits.

The Court found that Walker had waived his *Antommarchi* rights. (*Id.* at 3-6.) Any claim related to juror bias failed because Walker had not objected on the record at trial and had "failed to demonstrate that there [was] a 'substantial risk' that any of the prospective jurors exhibited a predisposition that could have influenced that juror's ability to discharge his or her responsibilities so as to warrant excusal." (*Id.* at 6.) The prosecution met its burden of proof in establishing Walker's guilt beyond a reasonable doubt. (*Id.* at 7-8.) Alleged *Brady* violations raised by Walker were meritless because the materials at issue were either disclosed to Walker or were not information within the prosecution's possession and therefore fell outside the prosecution's duty to disclose. (*Id.* at 8-9.) Walker's claim that his direct appeal was hindered because he did not have access to the full transcript from his mistrial failed because Walker should have raised this objection on direct appeal and, relatedly, because a § 440.10 motion does not afford a defendant an opportunity to vacate his conviction on this basis. (*Id.* at 9.) Finally, Walker's claim that his trial counsel provided constitutionally ineffective counsel was rejected on the ground that Walker had provided only "conclusory allegations without any factual details to support his contentions" and thus Walker had failed to meet his "'burden' of coming forward

with sufficient allegations to create an issue of fact" under New York law. (*Id.* at 11 (citing N.Y. Crim. Proc. § 440.40(4)(b)).)

On September 15, 2014, Walker filed his petition for a writ of habeas corpus in this Court. His petition states the following bases for relief: (1) that the prosecution failed to disclose certain photographic evidence in violation of *Brady*; (2) that Walker was improperly denied his right to "participate in the selection of jurors" under *Antommarchi*; (3) juror bias; (4) the admission of "false and prejudicial testimony" at trial; (5) that Walker was not provided with a full transcript of the proceedings in the mistrial, thereby hindering his direct appeal; (6) that the sentencing judge improperly considered conduct for which Walker had not been convicted in determining his sentence, in violation of the constitutional prohibition against double jeopardy; and (7) ineffective assistance of trial counsel. (Dkt. No. 1.)

The District Attorney filed his motion and supporting memorandum in opposition to Walker's Petition on February 26, 2015. (Dkt. No. 13.) The District Attorney contends that all but one of Walker's claims—his claim for ineffective assistance of trial counsel—were properly exhausted in state court. (*Id.* ¶ 16.) He further argues that Walker's claims based on his participation in jury selection, juror bias, and the admission of false and prejudicial testimony are procedurally barred because they were rejected by state courts on adequate and independent state-law grounds. (*Id.*) According to the District Attorney, any claims based on *Brady*, the mistrial transcripts, ineffective assistance of counsel, and double jeopardy should be rejected because state court adjudication of these claims was not "contrary to" or "an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

On both March 24, 2015, and May 18, 2015, Walker filed additional materials in support of his Petition that elaborate on the grounds for relief outlined in his Petition. (*See* Dkt. Nos. 21, 26.)

## II.     Discussion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a court may grant "a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court . . . with respect to any claim that was adjudicated on the merits in State court" if (1) the adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under most circumstances, "a federal habeas court may not reach the merits if the state court's rejection of a federal claim 'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "This rule applies whether the state law ground is substantive or procedural." *Coleman*, 501 U.S. at 729.

In denying Walker's motion to vacate his sentence, the State Supreme Court determined that all but one of his present claims were "procedurally barred" under state law as they were "record-based and should have been raised on [Walker's] direct appeal." (Dkt. No. 13-10 at 3.) Because Walker's double jeopardy claim was raised on direct appeal but not in his motion to vacate, it was not deemed procedurally barred on state collateral review.

In opposition to the Petition, the District Attorney argues that three of Walker's seven grounds for relief—his self-styled *Antommarchi* claim, his juror-bias claim, and his claim regarding false and prejudicial testimony—should be deemed procedurally barred for the reasons

7

stated in the State Supreme Court's order on Walker's motion to vacate. (Dkt. No. 13-1 at 4.) However, the District Attorney expressly disclaims reliance on procedural default as grounds for denying Walker's remaining claims, contending instead that each should be "denied on the merits" because "the state courts' determinations were neither contrary to nor an unreasonable application of Supreme Court precedent to the facts of this case."[1] (*Id.* at 14.)

The Court addresses those claims that the Government maintains are procedurally barred before turning to the remaining bases on which Walker seeks relief.

### A. Procedurally Barred Claims

"[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone v. Bell*, 556 U.S. 449, 465; *see Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999). However, a "state law ground is only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state, and application of the rule would not be 'exorbitant.'" *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010) (quoting *Garvey v. Duncan*, 485 F.3d 709, 713-14 (2d Cir 2007)). A state court's finding of procedural default "will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted); *see Gutierrez v. Smith*, 702 F.3d 103, 111-12 (2d Cir. 2012).

---

[1] In the habeas context, "procedural default . . . is not a jurisdictional matter." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Instead it is a "defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter." *Id.* (citation and internal quotation marks omitted). Here, where the State has disclaimed reliance on procedural default, the Court will not consider whether default could serve as an alternative basis for rejecting Walker's petition.

Ineffective assistance of counsel can serve as "cause" excusing procedural default. *Tavarez v. Larkin*, 814 F.3d 644, 650 (2d Cir. 2016).

In denying Walker's motion to vacate his sentence, the State Supreme Court determined that Walker's claims relating to his *Antommarchi* rights, juror-bias, and false and prejudicial testimony were "procedurally barred" because they were "record-based" and therefore "should have been raised on his direct appeal." (Dkt. No. 13-10 at 3.) It is well established that "New York permits only one application for direct review" and that unjustified failure to raise a claim on direct appeal precludes a defendant from seeking collateral relief on the same grounds in a motion to vacate judgment under New York Criminal Procedure Law § 440.10. *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *see Clark v. Perez*, 510 F.3d 382, 392 (2d Cir. 2008) ("[A] motion to vacate based on facts visible on the trial record must be dismissed where the defendant unjustifiably failed to raise the issue on direct appeal."); *Jones v. Keane*, 329 F.3d 290, 296 (2d Cir. 2003); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994).

An independent review confirms that these claims were record-based and were not raised on direct appeal and are therefore procedurally barred under New York law.[2] In support of his *Antommarchi* and juror-bias claims, Walker points only to evidence from the record of his second trial. As to Walker's claim concerning "false and prejudicial testimony," assuming, as the Court must in order to deem it properly exhausted, that this claim is the same as was raised in his § 440.10 motion, Walker maintains that the testimony of Conaway concerning a scar on the

---

[2] Walker argues that these instances of procedural default should be excused for cause. Because the Court rejects Walker's claim that his trial counsel was constitutionally ineffective, as detailed below, Walker cannot rely on ineffective assistance of counsel as "cause" to excuse his procedural default. *See DiGuglielmo v. Smith,* 366 F.3d 130, 135 (2d Cir. 2004) (per curiam) ("In order to establish attorney dereliction as cause, a petitioner must meet the standards for showing constitutionally ineffective assistance of counsel.")

9

fingerprint impression recovered from the inside window gate differed from her testimony during the mistrial, when she "neglected to mention any finding of a scar matching that of the one on her own finger," and that this discrepancy apparently suggests that her testimony was falsified. (Dkt. No. 21 at 1.)  This claim is also based on the record available on direct appeal and is therefore procedurally barred.

In any event, even if procedural default were no obstacle to Walker's petition, his claims would fail on the merits.  Citing *Antommarchi*, Walker claims that his right, under New York law, to be present during the sidebar questioning of a potential juror was violated.  This claim fails for three reasons.  First, because *Antommarchi* concerns a right under state law, it cannot serve as the basis for relief on federal habeas review.  *Diaz v. Herbert*, 317 F. Supp. 2d 462, 473 (S.D.N.Y. 2004) ("Even if Diaz's rights under *Antommarchi* were violated, it does not rise to the level of a federal constitutional violation."); *see Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Second, it is not clearly established under federal law as determined by the Supreme Court that a defendant has a right to be present at sidebar *voir dire*.  *Sanchez v. Burge*, No. 04–CV-2622, 2005 WL 659195, *3 (S.D.N.Y. Mar. 22, 2005); *Perez v. Greiner*, No. 00–CV-5504, 2005 WL 613183, at *5 (S.D.N.Y. Mar. 14, 2005) (collecting authorities).  Third, even if Walker had a federal right to be present at sidebar during jury selection, this right is subject to waiver and Walker waived it.  (*See* Dkt. No. 13-13 at 3:23-5:8.)

Walker's juror-bias claim also fails.  The Sixth Amendment guarantees criminal defendants the right to be tried "by an impartial jury."  "One touchstone of a fair trial is an impartial trier of fact—a jury capable and willing to decide the case solely on the evidence before it."  *United States v. Torres*, 128 F.3d 38, 42-43 (2d Cir. 1997) (quoting *McDonough*

10

*Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)) (internal quotation marks omitted). The presumption of correctness that attaches to a state court's factual findings on federal habeas review applies no less when the issue is a state court's conclusion that a juror was impartial. *See Romance v. Bradt*, 391 F. App'x 89, 91 (2d Cir. 2010) (per curiam).

Walker claims that Juror No. 6 was biased because his responses during *voir dire* revealed that his mother worked in the same NYPD identification unit as fingerprint expert Rosalyn Conaway. The relevant portion of the transcript from *voir dire* is as follows:

> THE COURT: . . . Anything else any of you have to tell us about any of you or anyone close to you has worked for law enforcement or for some law firm or lawyer's office? Mr. Williams.
>
> PROSPECTIVE JUROR: . . . My mother works in the identification section of the police department in 1 Police Plaza.
>
> THE COURT: How long has she been in that capacity? That's as a civilian employee, right?
>
> PROSPECTIVE JUROR: Yes.
>
> THE COURT: How long has she served there?
>
> PROSPECTIVE JUROR: As long as I have been alive.
>
> THE COURT: She's probably told you a lot about her work over the years, right?
>
> PROSPECTIVE JUROR: She's told me like some instances she's had with her subordinates. That's it.
>
> THE COURT: Is there anything about her work, either dealing with police officers or any other aspect of her work, that could somehow influence you as a juror here?
>
> PROSPECTIVE JUROR: Her work just sounds very monotonous. She just puts things in files and basically some of her subordinates organize them. That's basically it.
>
> . . . .
>
> THE COURT: So your mom's work . . . no relation, no, nothing to influence you about being a juror here, right?

>PROSPECTIVE JUROR: No, not at all.
>
>THE COURT: Thank you.

(Dkt. No. 13-14 at 141-42.)  In rejecting Walker's claim, the state court determined both that defendant had "failed to demonstrate that there [was] a 'substantial risk'" that Juror No. 6 "exhibited a predisposition that could have influenced that juror's ability to discharge his or her responsibilities so as to warrant excusal" and that Walker had "waived any objection to the impaneled jurors when the defendant selected and expressed satisfaction (through his attorney) with the impaneled jury." (Dkt. No. 13-10 at 6.)  Neither of the state court's conclusions was unreasonable within the meaning of AEDPA.  Juror No. 6's responses during *voir dire* afford little reason to disturb the state court's conclusion in light of the "great deference" accorded to a trial judge's determinations on this subject and "the special capacity of the trial judge to evaluate actual bias on the part of prospective jurors."  *Torres*, 128 F.3d at 44.

As described above, Walker claims that his trial included "false and prejudicial testimony" because fingerprint expert Conaway testified at trial that there was a scar on a fingerprint impression recovered from the inside window gate that matched a scar on Walker's finger, but she had "neglected to mention" this scar during Walker's mistrial.  (Dkt. No. 21 at 1.)  The fact that Conaway gave additional testimony at trial that was not offered during the mistrial is, alone, not a basis on which to grant Walker relief.  To the extent that Walker challenges the sufficiency of the evidence that supported the jury's finding of guilt, his claim also fails.  A reviewing court must conclude that "evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements on the crime beyond a reasonable doubt.'"  *Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))

(emphasis in original). In this case, a fingerprint expert testified extensively about the basis for her conclusion that Walker's fingerprint matched the fingerprint recovered from the Diaz residence, and a rational trier of fact could have, substantially on this basis, rendered a guilty verdict.

### B. Claims Not Procedurally Barred

Although the District Attorney has expressly disclaimed reliance on procedural default as grounds for denial, Walker's remaining claims fail on the merits because the state courts' disposition of each was neither "contrary to" nor an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

First, Walker argues that the prosecution failed to disclose certain photographic evidence in violation of *Brady*. Specifically, Walker states that that the prosecution withheld photographs taken by a court-appointed investigator that depict the existence of mounted surveillance cameras on the building that housed the Diaz apartment. (Dkt. No. 13-5 at 4.) These photographs, according to Walker, could have been used to impeach Detective Sankhi's testimony that the Diaz residence did not have cameras. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). The state court rejected Walker's claim because the photographs in question were not suppressed by the state: rather, the photographs, which were taken by a court-appointed investigator in aide of Walker's case, would have been accessible to Walker's counsel and would only have been in the prosecution's possession if counsel for Walker had provided them through reciprocal discovery. (Dkt. No. 13-10 at 8-9.) Because it is fundamental that *Brady* only

(emphasis in original). In this case, a fingerprint expert testified extensively about the basis for her conclusion that Walker's fingerprint matched the fingerprint recovered from the Diaz residence, and a rational trier of fact could have, substantially on this basis, rendered a guilty verdict.

### B. Claims Not Procedurally Barred

Although the District Attorney has expressly disclaimed reliance on procedural default as grounds for denial, Walker's remaining claims fail on the merits because the state courts' disposition of each was neither "contrary to" nor an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

First, Walker argues that the prosecution failed to disclose certain photographic evidence in violation of *Brady*. Specifically, Walker states that that the prosecution withheld photographs taken by a court-appointed investigator that depict the existence of mounted surveillance cameras on the building that housed the Diaz apartment. (Dkt. No. 13-5 at 4.) These photographs, according to Walker, could have been used to impeach Detective Sankhi's testimony that the Diaz residence did not have cameras. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). The state court rejected Walker's claim because the photographs in question were not suppressed by the state: rather, the photographs, which were taken by a court-appointed investigator in aide of Walker's case, would have been accessible to Walker's counsel and would only have been in the prosecution's possession if counsel for Walker had provided them through reciprocal discovery. (Dkt. No. 13-10 at 8-9.) Because it is fundamental that *Brady* only

(emphasis in original). In this case, a fingerprint expert testified extensively about the basis for her conclusion that Walker's fingerprint matched the fingerprint recovered from the Diaz residence, and a rational trier of fact could have, substantially on this basis, rendered a guilty verdict.

### B. Claims Not Procedurally Barred

Although the District Attorney has expressly disclaimed reliance on procedural default as grounds for denial, Walker's remaining claims fail on the merits because the state courts' disposition of each was neither "contrary to" nor an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

First, Walker argues that the prosecution failed to disclose certain photographic evidence in violation of *Brady*. Specifically, Walker states that that the prosecution withheld photographs taken by a court-appointed investigator that depict the existence of mounted surveillance cameras on the building that housed the Diaz apartment. (Dkt. No. 13-5 at 4.) These photographs, according to Walker, could have been used to impeach Detective Sankhi's testimony that the Diaz residence did not have cameras. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). The state court rejected Walker's claim because the photographs in question were not suppressed by the state: rather, the photographs, which were taken by a court-appointed investigator in aide of Walker's case, would have been accessible to Walker's counsel and would only have been in the prosecution's possession if counsel for Walker had provided them through reciprocal discovery. (Dkt. No. 13-10 at 8-9.) Because it is fundamental that *Brady* only

embraces evidence suppressed by the state, there is no reason to disturb the state court's conclusion. *Strickler*, 527 U.S. at 282.

Second, Walker contends that he was not provided with a full transcript of the proceedings in the mistrial, thereby hindering his direct appeal. It is well established that "the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." *Britt v. North Carolina*, 404 U.S. 226, 227 (1971). On a direct appeal, this means "that the State must afford the indigent a 'record of sufficient completeness' to permit proper consideration of (his) claims." *Mayer v. City of Chicago*, 404 U.S. 189, 193-94 (1971) (quoting *Coppedge v. United States*, 369 U.S. 438, 446 (1962)); *see Kennedy v. Lockyer*, 379 F.3d 1041, 1050-51 (9th Cir. 2004) (Reinhardt, J.). Although Walker's trial counsel was provided the full mistrial transcript, his counsel on direct appeal was not. (Dkt. No. 13-6, 18-19.) In turn, Walker claims that his direct appeal suffered in two ways: without the mistrial transcript, he was (1) not able to show the alleged inconsistency in Conaway's testimony and (2) not able to identify the court-appointed investigator who was sent to take photographs of the Diaz residence. (Dkt. No. 21-4 at 11; Dkt. No. 21-5 at 1-2.) Both arguments, discussed above, are without merit. It is thus unsurprising that Walker's appellate counsel determined there was "no basis to believe that obtaining [the mistrial] transcripts w[ould] yield information that [would] lead to an issue that could be raised on appeal." (Dkt. No. 13-6 at 19.) "In order to prevail on his habeas claim that the Appellate Division infringed upon his right to a fair appeal, [a petitioner] must show prejudice resulting from the missing or incomplete transcript." *Santiago v. Coughlin*, 107 F.3d 4 (2d Cir. 1997); *see Hernandez v. Larkin*, No. 12–CV-8090, 2013 WL 4453316, at *20 (S.D.N.Y. 2013) (collecting authorities). Because Walker has not suggested any meritorious appellate issue, and "mere speculation of

possible prejudice . . . is not enough," he has not established prejudice resulting from his appellate counsel's lack of access to the mistrial transcript.

Third, Walker argues that the sentencing judge improperly considered conduct for which he had not been convicted—the Bellamy burglary—in determining his sentence, in violation of the constitutional prohibition against double jeopardy. But as the transcript from sentencing makes clear, Walker was sentenced on the basis of the "case for which he was convicted," namely the Diaz burglary. (Dkt. No. 13-12 at 6-7.) Although Justice Seewald said that he was "cognizant of the facts of the [Bellamy] burglary," having presided over the mistrial at which those facts were established, he ultimately explained that his sentence reflected Walker's conviction for the Diaz burglary and Walker's prior 2003 conviction for burglary. In any event, the prohibition against double jeopardy would not be implicated even if Justice Seewald had taken the circumstances of the Bellamy burglary into account in determining the appropriate sentence for the crime of which Walker was convicted. *See Witte v. United States*, 515 U.S. 389, 401 (1995) ("[C]onsideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted."); *Nichols v. United States*, 511 U.S. 738, 747 (1994) ("Sentencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior.").

Finally, Walker argues that his trial counsel was constitutionally ineffective. In order to prevail on a claim of ineffective assistance of counsel, Walker must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a showing that "counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and [] affirmatively prove[s] prejudice arising from counsel's allegedly

15

deficient representation." *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011) (quoting *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008)). In considering *Strickland*'s first prong, courts "strongly presume[] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 690)). In support of the claim that his trial counsel was constitutionally ineffective, Walker predominately cites his counsel's failure to raise the issues discussed above, such as counsel's failure to impeach Conaway's "perjured testimony." (*See* Dkt. Nos. 21-2, 21-3.) Because the Court has already considered and rejected these claims, and a counsel's "failure to make a meritless argument does not amount to ineffective assistance," Walker's ineffective assistance claim must also fail. *United States v. Noble*, 363 F. App'x 771, 773 (2d Cir. 2010).

### III. Conclusion

For the foregoing reasons, the Petition is DENIED. Because Walker has failed to make a substantial showing that he was denied a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: May 10, 2016
New York, New York

_____
J. PAUL OETKEN
United States District Judge

Copy mailed to pro se party by Chambers.